Judge Newsom, Judge Karnes, and I are happy to welcome you to this sitting. As you can see, Judge Karnes is participating by Zoom, and we've got him over there on the screen. We haven't really had any issues with our Zoom transmissions lately, but if for some reason something goes wrong with Judge Karnes' feed, then we'll just stop and try to bring him back on board as soon as possible. But hopefully we won't have any of those issues. We have two cases to hear this morning. Our first case is No. 22-10514, North Shore Medical Center, Inc. et al. v. Cigna Health and Life Insurance Company. Mr. Feinberg. Thank you, Your Honors. Good morning. May it please the Court, Justin Feinberg. This case presents an important question under Florida statutes. What is the reasonable amount that a health insurer must pay hospitals when they provide emergency services without an in-network agreement? In this case, the record evidence demonstrated, at a minimum, that Florida law and underpaid the hospitals. The evidence included that for a period of time under the party's course of dealing for these very same out-of-network emergency services, Cigna paid the hospitals five times more than what they paid for the claims that are in dispute in this litigation. At the very same time Cigna was underpaying the disputed claims at issue in this case, Cigna was paying the hospitals twice as much on an in-network agreement for a different insurance product. Despite the fact that longstanding holdings and precedent from this Court recognizes that out-of-network claims are different from in-network claims and out-of-network claims should be paid at a higher amount. Say the last thing again. This Court recognized in the HCA services case that out-of-network claims should be paid higher than in-network claims. In footnote 33 of the health services... I can't make any sense. I mean, when you contract insurance company and provider for a certain rate, you're telling me that as a matter of law, an out-of-network provider has to automatically be paid more for the same service? No, I'm not saying as a matter of law. I'm saying as a matter of industry custom, what's usual and customary in the managed care industry is that out-of-network claims are paid higher than in-network claims because the in-network claims and the negotiations that go with an in-network contract come with a bundle of contractual benefits. And when you don't have those contractual benefits, providers don't discount their amounts that they accept in the same manner. You say industry custom, but maybe not in Florida, but in researching case law for this I've seen a number of cases nationwide where insurance companies are paying bottom basement rates for out-of-network claims and then the providers are having to sue under whatever state law exists. So, I'm not sure that they're... maybe Florida's different? It is. But I haven't seen any case law to indicate that. But Florida is different because Florida has a specific statute that protects providers. The statute doesn't say that you get paid higher if you have out-of-network services. It just says usual and customary services in the community where they're provided, right? It does. And the statute is provider protective to ensure that the providers get paid adequately for the services that they are required by law to perform. And what the statute does is it provides a lesser of methodology. It's lesser of the provider's charges or the usual and customary provider charges for similar services in the community where the services were provided. Now, there was ample record evidence that supported the hospital's claims that they were underpaid for these out-of-network services. Judge Jordan, the fact that providers are being underpaid and have to sue is evidence that they are being underpaid. I said that in other states. I didn't say Florida. So Florida could be a totally different animal. And that's why the statute makes a difference in Florida and what we're talking about here. Because this is a fact-intensive inquiry under the statute. It's 641.513, which was incorporated into the statute that's at issue here, 627.64194, which provides that lesser of methodology. But here, the record evidence demonstrated that the hospitals were underpaid based on these metrics. In addition, Cigna's own expert prepared her own report looking at the data. And on three different benchmarks, she concluded that Cigna violated those Florida statutes and underpaid the hospitals, causing the hospital's damages. Those — on those facts, this case should have gone to the jury. The judge took that away from the jury entering summary judgment. And in so doing, he made three errors. The first was an error of law, the interpretation of the Florida statutes, mandating that a provider, in order to state a cause of action, had to present evidence of other providers. Second, he made an error of fact on the summary judgment standard because he ignored the record evidence of what the provider billed, what the provider was paid, and what other providers in the community billed and were paid. And all of that data was in the record. And the plaintiff pointed out in the briefing specifically where in the record that evidence was. That was at page 10 of our statement of undisputed facts. And we pointed all of that out to the judge. Can I ask you a quick question about your — the first point you raised, the question of law, the error of law that you allege? And I'll ask both of you this. If the district court is correct that as a matter of law, the word community must necessarily include providers other than those before the court, what would you do in a, you know, sort of uber-rural setting where the only provider within whatever the geographic scope of the community may be is the plaintiff or a member of the plaintiff, you know, sort of corporate conglomerate? You've hit the nail on the head with what was the legal error. When the district court said that the jury must take into account other providers in the community, and he said that twice at page 13 of the summary judgment order, that was the error, because under the statute, the statute is not — only has very limited defined terms. It — and the legislature has to be interpreted to do that for a reason, because this is a fact-intensive inquiry as to, first, what is the community? That is a jury question to decide what is the geographic scope of the relevant community. It is very possible within the jury's province that the jury could say the community encompasses just one provider, and that is exactly what happened in the Baker County case. The Baker County case, which is the leading and really only appellate decision from the Florida appellate courts, basically found the mirror image error to what the district court found here. In the Baker County case, the plaintiff said, we are the only hospital in our county. We are the only hospital in our community. Therefore, what we charge, our billed charges, are what's usual and customary within our community, and said that should be decided as a matter of law. The trial court didn't agree, but only disagreed to the extent that that was a fact-specific inquiry for the jury's decision as to what is the relevant community. Once the definition of community is established by the jury, you then can look to the relevant portions of the rest of the statute, which is, are there other providers of similar services? It's not a mandate that they actually have to be other providers of similar services within that geography. Here, I want to make sure I've got the record right. Here, at least at summary judgment, the experts for both sides agreed or didn't contest that the relevant communities were emergency providers in Palm Beach County and emergency providers in Miami-Dade County, right? Absolutely. Your expert said that, and Cigna's expert didn't contest that. Absolutely. There was no contest as to the community or the providers. The community wasn't really a disputed issue at all, and if you look at Cigna's briefing, we all agree that community is geography. Go back to the statute. The usual and customary provider charges for similar services in the community where the services were provided. Community is a geography. That is the first inquiry that needs to be made. What is the relevant community? That is a rule of exclusion, not inclusion. When the jury decides what is the community, they then decide what providers are outside of the community, and then you look to what is inside the community. Are there other providers of similar services? Once you establish that, you then can look to what is the usual and customary provider charges. Let me give you a real-world example of what happened in this case. We have two trauma hospitals that are plaintiffs in this case. One is Delray Medical Center, which is the south part of Palm Beach County, and one is St. Mary's Medical Center in the northern part of Palm Beach County. They're the only two trauma hospitals in the county, only two hospitals providing those trauma services. The jury would be well within its discretion to say that the service area around that hospital, that single hospital, is the community, and those would find it to be the relevant community. If the jury were to find the community is broader, it would be the whole county. You have both of those hospitals now with their data in the record, from which the jury could then decide what are the similar services, what is usual and customary provider charges, and then do the analysis of what is the lesser of methodology. The district court said in part that you had not provided, assuming that its baseline legal understanding was correct, so let's take that as a given for a moment, said that the plaintiffs had not provided evidence of the charges from other providers, either submitted, billed, paid, etc. What's your response? I respectfully disagree with that because the record evidence was that we submitted the our, the plaintiff provider's billed charges, amounts billed, and amounts accepted from various payer sources, but Cigna did the same thing. Cigna provided its data of what it paid to other providers who billed them for those same services. That data was all in the record, which is why the record is so voluminous, because what we didn't want to have happen was for the district court to say we didn't have enough evidence. So what we submitted... Counsel, I'm sorry, when you say you pointed out to the district court where the data was, didn't you in fact just point out the 320,000 pages of Cigna claims data? Didn't you say that it's in there, go get it? No, respectfully we did not, because at page 10 of our summary judgment brief, we specifically identified our expert's report, which summarized all of the data. He analyzed the data that was both our paid claim data, our billed charge data, and the Cigna paid claim data, which included billed charges and amounts accepted. So we did point out where in the evidence was for the jury's determination as to whether there were other providers of similar services and what those usual and customary rates are. So respectfully, it is in the record where we pointed this out to the district court. Yeah, but you pointed to your expert's summary with 320,000 pages. Wasn't that true? Plus? The expert report was only 34 pages. At page 33... I'm not talking about the report, Counsel. I'm talking about the report summarized 320,000 pages. Yes, Your Honor. Okay. I wonder if there wasn't something between 34 and 320,000 that might have been a little more informative and probate. I think, respectfully, I think that I don't agree with that because this is a fact-intensive inquiry for the jury's consideration of all of those factors. Once that evidence is in the record for the jury's consideration, the jury then has or should have had the opportunity to weigh that evidence and determine whether or not that data was, in fact, from similar providers, whether the services were similar and what the usual and customary amounts were. Our experts summarized that... Go ahead. I'm sorry. No, you go ahead. Finish the sentence. Our experts summarized that data, packaged it up and said, I've analyzed this data. Here's the summary of my analysis, and then went on to exercise his discretion to decide what rates were comparable or were not comparable. All right. Let me go back to something I sort of shared, Judge Jordan's skepticism about the practice being to pay out-of-network rates that are higher than in-network. If that is, in fact, the practice with whatever compulsion behind it, why would any provider ever agree to be in-network? Because the product that we're talking about is an Affordable Care Act product by which Cigna creates a narrow network, which means there are a limited number of providers, and those providers then get all of the volume, not just emergency volume, but they get elective volume, which is the preferred volume. They agree to take a discount because they're getting more volume. That is the essence of the managed care bargain. It's rate discount for volume. When you're out Who makes the decision, but I apologize, you're disadvantaged by knowing a great deal more than we do, so we're having some difficulty communicating the questions in this area. But who makes the decision as to whether a patient goes in-network or out-of-network? It's the patient, isn't it? The patient can, but in emergency situations, the patient may not have that choice because they have to go to the closest provider, and Cigna knows that we as hospitals are duty-bound by law to provide those services, those emergency services to their members. So what they can do is they can create a narrow network, a small group of providers who agree to take a deep discount because they get a preferred volume, just like going to Costco. You get But they won't get a preferred volume unless they're more likely to go to a provider who is, which is out in-network. And you've just told me that the patient makes the decision. The patient makes the decision to decide where to go, except in the emergency situation, they may not have a choice. I'm sorry if I'm not answering your question, Judge Carnes. Well, if they don't have a choice, I don't know why anybody would agree to get paid less because they're more likely to get patients who don't have a choice and have to go where they have to go anyway. Because it doesn't. Because the contracted rates are not just for emergent volume. The contracted rates are for all volume. And in fact, if you look at the emergency room economics, the emergency room needs to be open 24 hours a day, seven days a week and be available for all comers. You may see no patients or you may see 100 patients, but you have to be at the ready all hours of the day, every day, New Year's Eve, Christmas Eve, every day of the year. The elective volume is much more preferred because you can schedule that. You have the patients in hour after hour. Utilize the employees, the equipment. Okay, counsel. I've taken up enough of your time. Thank you. All right. Thank you very much. You've saved your time for rebuttal. Thank you, Judge. You're ready. Mr. Haskell. May it please the Court. Warren Haskell, McDermott, Will and Emery on behalf of Cigna. Now, this case, Your Honors, is a straightforward application of a summary judgment rule that a plaintiff must offer specific facts to establish a genuine issue for the jury, not just point to the record and tell the court to do the work. Here, that standard required tenants' hospitals to and the community of providers of similar services. And in discovery, Cigna produced hundreds of thousands of pages of information about what other providers charged and received, but tenant didn't use any of it. That's summary judgment. Can I ask? Oh, go ahead. No, you go ahead. Can I just ask you to address the question that I asked your adversary about the legal error? Because I guess you're here saying the word community is a statutory term for the court. It has a plain meaning, and the district court says its plain meaning, in effect, is that it must include providers other than those before the court, correct? Is that what the district court said? I think the district court said community includes all providers of similar services. And in this case, there was no dispute that there were other providers of similar services other than tenant. And because tenant didn't establish what fair market value was based on providers in the community, it didn't meet its summary judgment burden, right? So there was no dispute, as you heard from tenant's attorney, that there were other providers in the community. The community was South Florida, two counties, very densely populated counties in Florida. And when tenant then came with only its own charges and said, here's what my experience, here's what my claim experience is, but it didn't offer any evidence about what fair market value is for providers, Judge Moore said correctly, well, you haven't established what fair market value is in the community because you're ignoring the other providers that everyone admits exist. Well, you say that, but, and the specificity problem of pointing the specific part to the record is a separate issue. But on the more general issue, the plaintiff's expert said that he had considered, and I'm looking at page 24 of his report, I also considered amounts that Cigna paid to other providers in the same communities that the hospitals operate in. I also considered the amounts that Cigna paid to other providers in the same geography as the hospitals, particularly providers with similar market presence. So the claim that the plaintiff's expert did not consider anything other than the hospital's own records is wrong. Well, I think there are two issues there, Your Honor. One is, what did tenant produce in summary judgment about what that analysis showed? And second, did that analysis actually show what the fair market value was based on what those other providers? Let's take those things up at a time. The accusation, or the claim, that the hospitals did not provide any evidence aside from their own rates is wrong, right? That's, I think that's exactly correct, because what tenant did at summary judgment The expert says he considered Cigna's payment to other providers. But the only fair market You may think that's insufficient because of the way the expert did his report, and the report couldn't be relied on for other reasons, or that there's a mismatch. That's one thing. But you can't say that the plaintiff's expert only considered the hospital's own payment records. He's telling you that he didn't. And Cigna provided its payment records for emergency services not only to the plaintiffs, but all sorts of other providers, in-network, out-of-network, contracted. So, you really have to help me to understand the claim that the plaintiffs did not produce any evidence whatsoever aside from their own rates. On summary judgment, tenant argued that fair market value was 75% of its own bill charges. That was exclusively based on its own claims experience. That's the conclusion. That's the ultimate conclusion. You can disagree with the conclusion. I mean, your expert said that was an underpayment, right? Our experts rebutted the expert testimony of plaintiffs. Now, my question. Your expert admitted there was an underpayment, right? No. I don't think that's correct, Your Honor. You and I are going to have a little bit of trouble with the record in this case, if we continue at this pace. Didn't your expert say that even using the most conservative criteria, there was an underpayment of over a million dollars? That's not true. There is a fourth benchmark where the expert calculated saying, looking at the community of the particular product here, it's actually overpaid. And all of the benchmarks that our expert looked at were to compare what Tenant's expert was doing and saying, had they properly considered certain factors within Baker County, the amounts would have been a lot less than what the Tenant's expert was doing. And let's, I want to address Your Honor's question about what Tenant's experts actually did and what they presented at summary judgment. The only number that Tenant's expert said was the 75% of its billed charges, which was based on a tiny subset, just 1% of Tenant's own claims data, excluding all of its in-network claims, even though Baker said that those should be considered, excluding a lot of its out-of-network claims too, including an out-of-network rate deal that it had with a major payer, Blue Cross Blue Shield, in the community. And all it did was present that 75% of billed charges. And then it's, and as you point out, the expert said, and when I look at the other providers in the area, that supports it, but it never did, the expert never did any analysis to show what fair market value would have been based on that. And all the Tenant cited in its summary judgment brief, I will quote page 10, which is, they're saying is the standard. At page 10, what Plaintiff said was, this comprehensive universe of rate information will show actual reimbursement amounts ranging literally from 1% of billed charges to 100% of billed charges. And they cite their statement of material facts. And in that, all they do to this point is basically say that certain other providers were paid more than what Tenant was paid. That's not offering any facts about what other providers pay. That's just saying. That's all in the claims data. That's all in the claims data. That's all in the claims data, but they don't actually say what the claims data shows in terms of what fair market value would be based on those other providers' charges. The community is providers of similar services. What Judge Moore was saying is, you cannot present what you think is a calculation based on your own Plaintiff, you know, providers' charges, the Tenant hospitals, and say, that's fair market value in the community. Think about what the statute is all about. Can I ask you a question about that? Maybe this is an antecedent question, but so we're already to the point of debating whether or not the hospitals put on evidence of other providers' charges. Maybe they didn't make the charges. Maybe they did, maybe they didn't. Are you sure at summary judgment that they had to? I mean, why? I mean, like, their only burden at summary judgment is to show that a reasonable person could conclude that there was an underpayment, right? Why isn't there evidence? Why doesn't it at least allow an inference that this is occurring on a broader basis? When we think of it, the statute says that there has to be usual and customary provider charges in the community for similar services. Right. There is no dispute that there are other providers in the service, in the community. And so therefore, think about what this statute requires you to then present what is the fair market value of other providers. If a provider, an out-of-network provider like Tenant could just come to the court and say, only look at my own charges, don't look at the community. It's just, I mean, all they're really saying by inference is that my experience is indicative of the community. What's wrong as a matter of law about that? I just don't think I understand that. Well, we cited Bailey, a Tenth Circuit case in our briefs on page four and throughout. It's an antitrust case where, and in antitrust cases, it happens all the time. A plaintiff will come up and say, here's what the market is. Here's what I believe the product market is or the geographic market is, right? And a court can obviously then look at that and say, as a matter of summary judgment, you don't meet the standards of what a product market is because your product is too narrow or a geographic market because it's too narrow. That you can't get to the jury based on an incorrect view of what the market is. And that's exactly what Judge Moore was saying. I cannot, you're only presenting your own charges. The statute is designed to figure out what is fair market value on the community. And you have offered me no facts to show what fair market value in the community would be. You only offered me this cherry-picked analysis of what your own for-profit hospitals experienced on a 1% of their claims. And I'm not going to do the work for you by looking at the hundreds of thousands of pages of claims data. As summary judgment, you have to show your- What would you have expected the plaintiffs to do in terms of setting out over 300,000 pages of claims data in a response to a summary judgment motion? At minimum, their experts should have looked at that and said, based on this data, here's what fair market value would have been based on the entire record. He didn't do that. He didn't do that. You think that his 75% figure is a complete exaggeration and not supported by the data. But to get past summary judgment, they don't have to convince the district court that that 75% figure is correct. They just have to present enough evidence, as Judge Newsom suggested, to have a reasonable jury find that there was an underpayment. And the parties agreed that the two relevant communities were Miami-Dade County and Palm Beach County, right? So in terms of geography, there was no dispute between the sides. There was no dispute over the community. Tenant didn't actually raise it in their summary judgment motions. There was nothing to dispute about what community was. Within that community, there are obviously other providers. It was never disputed. And that 75% of bill charges is only based on tenants. And this is, the expert admitted this, the 75% of bill charges is only based on tenants' own claims experience. All right, let me give you a hypothetical. That's not this case, okay? Okay. Assume that Palm Beach County has only two, three emergency providers. Three in the entire county. Two of them are tenant hospitals. Okay. Summary judgment, those two hospitals provide their own data, but not the data relating to the third provider. Do they get past summary judgment? If the tenant could then offer a rational basis for why fair market value could be based on those two. They just say, we occupy two-thirds of the market. We're two-thirds of the providers. Here are our rates. We're not bothering with the third one. At summary judgment, they say, we think the underpayment is X percent, whatever it may be. Do they get past summary judgment? So as your Honor said, not the facts in this case. And Cigna produced the data for the third hospital. And if that's... No, not in my hypothetical. So there's just no other data? There's no data. So if we didn't have a genuine, it sounds like we don't have a genuine dispute over the providers in the market. And you don't have information provided by the plaintiff on the third one. We cannot present a genuine disputed fact over what the fair market value is because their only records show what those hospitals are. And we haven't, Cigna, as an opposition, hasn't said there's other hospitals in the market. No, you said there's a third hospital and they haven't given us anything. But we don't have the charges and we wouldn't have the information to rebut what they have. So at that point, there's a genuine issue over what it is because the only facts in the record are... No, your argument is the same. Your argument is, it's their burden to come up with the rates for the third provider that's not a tenant hospital. They haven't done so. Therefore, we can't figure out what usual and customary is in the community. Therefore, we win at summary judgment. Same argument. I don't think so, your honor. I don't think so. I think in that case, because there was only, it's a much different community that you're talking about here, where you can't, you're talking two out of three as opposed to what we're talking about. This is just nose counting? I mean... No, it's not. It's not. We're talking about... Theoretically, you could have a rural county, as Judge Newsom, you were saying, where there's only one hospital. There are no other UCCs. There are no other providers in that hospital. In that case, could a jury find that there's no genuine issue of fact based on only one provider? It seems like that would be something that... It doesn't find no genuine issue of fact. I'm sorry. Is there a genuine dispute to get to a jury, right? There's only one provider there. That's the facts of the case. And then there's a spectrum, obviously. But here there are... This is my curiosity. So my rural hospital example is obviously the easiest one. Judge Jordan's hypothetical is now we're working our way down the spectrum. In your case, you say it's sort of further down the spectrum. So at what point on the spectrum do we, as a matter of law, draw a line and say like, no more reasonable inferences. Jury couldn't possibly conclude that. Well, I think the key here would be that the tenant would have actually had to have said, here are... We don't dispute... They didn't dispute that there were other providers in the market. And we think that our charges are enough based on we've looked at those other charges or we didn't have access to them, but we think it's enough. And that's what tenant didn't do. So I don't think your Honor needs to get to a broad, you know, here's the standard for every case because this is a summary judgment case where tenant admitted there were other providers in the community. It admitted that it had the data on those other providers. And it never actually calculated a fair market value for the entire community. So we don't get there. That's why this is a summary judgment case where tenant just basically said, just here's the deck, Your Honor. I'm not going to show my cards. You could figure out what the winning hand is. And so that's why at this stage, you can't, you don't even get there because they admitted that this is not just two out of three. There are a lot of other hospitals and they just didn't look at it at all. And again, what the statute is meant to say is this is a market check. It's not just going to be based on a single provider's charge. And therefore, as a matter of law, you have to look at providers in the community. Because tenant didn't do that. Judge Moore was absolutely correct to say that summary judgment was warranted. Roberts. Why couldn't tenant rely on your expert's work? For three reasons, Your Honor. First, our expert work was entirely rebuttal testimony. In support of your motion for summary judgment and the cases you cite, I think, only deal with a party using its own rebuttal expert as affirmative evidence at summary judgment. You went forward first, moving for summary judgment, and you submitted, in part, your expert report, did you not? In our motion for summary judgment, I don't believe we cited any of the benchmarks that we're talking about here. We cited, I believe, cost, although I'm not positive about that. I don't know the answer to this question. Did you rely, in part, on your expert's report in your motion for summary judgment? I believe we did cite our expert report. Why in the world can't a plaintiff rely on that to say your own evidence shows that there are issues of material fact? I'll go to the two other reasons. It's hearsay. They didn't. And tenant only cited the report, not deposition testimony. The report is clearly hearsay that couldn't be admitted. Experts can rely on hearsay in providing their opinions. The report is hearsay, so they couldn't have admitted the report, and they never cited any deposition testimony, which is clearly hearsay. You're telling me that parties can't rely on an expert report at summary judgment, assuming that the evidence is reducible to admissible evidence at trial? Well, again, the issue would be had they proved their own burden, could they then look at the report? I think the third reason, Your Honor, why the report and why the opinions aren't relevant at all, is because, again, Ms. Edwards was not offering her own affirmative opinions. She was just saying, look, if you change these certain factors, if you look at what I think is some factors that are more consistent with what Baker County says, a fair market value should be based on other providers. Tenant overstates significantly what its damages are. She never offered an affirmative view on what fair market value was. She never offered an affirmative view on community was or what providers were in the community. And she also was only looking at sickness data, which had no other providers. It only had a hospital data. All right. Thank you very much. Thank you, Your Honors. Thank you. I'll be very brief. I think, Judge Newsom, you hit it on the head when you asked about the summary judgment standard and the evidence in the record to create at least the inference that a reasonable jury could render a verdict in the plaintiff's favor. We clearly had submitted sufficient evidence for the jury to draw that inference. I'll give you the opposite hypothetical that I gave Mr. Haskell. Sure. Which is, I think, a tough one for you. 100 emergency providers, one tenant hospital. So you're one out of 100. At summary judgment, you submit only the rates for that hospital. Do you survive summary judgment? I think the answer is yes. And let me tell you why. No matter how many claims you had? Yes. No matter what the rates were? Obviously, every case is going to be fact specific. But I go back to the statute. The statute says it's the lesser of the provider's charges or usual and customary provider charges for similar services in the community. What the Baker County case said was that usual and customary provider charges doesn't mean the amount that you billed. It means the amount that you also accepted from other sources. That is the only data that Baker County said should be considered. So it's the provider's billed charges and the amount the provider bills and accepts. After that, it's within the jury's discretion to determine what is the relevant community around that hospital. In your hypothetical, if the community was... But you didn't accept, in my hypothetical, you're suing, so you didn't accept payment. You billed $75,000 for something and Cigna said, we're paying you $5,000. And you didn't accept it and you went to federal court and you filed a diversity action. And then you submit only the fact that you billed $75,000 and that you get $40,000 something from in-network providers for the same thing. Correct. We didn't accept it from Cigna. What the Baker County case says is you have to produce evidence of not just what you billed, what the provider billed, but what the provider accepted from other payer sources, not just the defendant, from other insurance companies, different products. That's what Baker County says. Usual and customary provider charges means you have to submit the evidence of what you billed and received from others, which is what we did in this record for this provider. If that was the only data in the record, that would be sufficient to overcome summary judgment because the jury could render a verdict in our favor. A reasonable jury could render a verdict in our favor if we didn't produce any other evidence. If we produced just that evidence, that would be enough. The jury has to decide what is in the community. And here's the really the impossible burden that your hypothetical would put on a provider like my client's. The information that you're talking about is jealously guarded. It is highly confidential. Look at the record in this case. 300,000 pages of record. That's all designated attorney's eyes only. We only get this information from Cigna in the most highly confidential way. It is an impossible burden if we had to get the rates that our competitors or others in the market get paid and accept from others. It's an impossible burden. We would never be able to take advantage of what the legislature said was a statute that required the insurance companies to pay for these services that were required by law to perform. So in your hypothetical, Judge Jordan, I think if we present the evidence of our bill charges and our bill charges in amounts that we accept and receive from others, that is sufficient data to overcome the summary judgment and the summary judgment standard. I see that I'm out of time. Thank you very much. Thank you both very much. It's been very helpful. All right, our next.